The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Berger and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award. However, the Full Commission amends the Opinion and Award regarding plaintiffs right-sided complaints.
 ***********
The Full Commission finds as fact and concludes as matters of law, the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction over the parties and the claim.
2. All parties have been correctly designated, and there is no question as to the misjoinder or non-joinder of parties.
3. An employer-employee relationship existed between the plaintiff and defendant-employer Franklin County on 1/11/97.
4. The defendant-employer is self-insured, and Sedgwick of the Carolinas is a third party administrator employed to service the workers compensation insurance coverage for defendant-employer at all relevant times in this claim.
5. Plaintiffs average weekly wage at the time of her injury was $614.90, with a corresponding compensation rate of $409.95.
6. Subsequent to the hearing, twenty-five pages of medical records were marked as stipulated exhibit 1 and received into evidence.
7. Subsequent to the hearing, documents from plaintiffs personnel file were marked as stipulated exhibit 2 and received into evidence.
 ***********
Based upon the findings of fact found by the Deputy Commissioner, the Full Commission finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was a fifty-two year old who had been employed as a nurse for over six years by defendant-employer.
2. On or about the weekend of January 11, 1997, plaintiff was on call to respond to homebound patients. Plaintiff had to provide medical treatment to a homebound patient on the morning of January 11, 1997. Due to icy weather conditions, plaintiff rode with her husband in his truck in order to pick up supplies that were in the back of the county vehicle that she usually operated in traveling to visit homebound patients. The county vehicle was in the parking lot where defendant-employers place of business was located. When plaintiff got out of her husbands vehicle in order to obtain the supplies out of the county vehicle, she slipped and fell backwards on the icy surface of the parking lot. Plaintiff immediately experienced pain on the left side of her body, left hip, left elbow, left shoulder region and upper back.
3. The January 11, 1997 slip and fall by plaintiff was an unexpected and unforeseen event which interrupted her normal work routine.
4. Following January 11, 1997, plaintiff experienced soreness on her left side for a few days. This pain abated; however, plaintiff began to experience periodic problems with pain in her neck during the time period following January 11, 1997.
5. On January 13, 1997, plaintiff reported to her supervisor that she had sustained injuries as a result of a fall over the weekend. A Form 19 prepared by defendant-employer reveals that plaintiff described pain in the left clavicle region.
6. Plaintiff did not seek treatment for pain on the left side of her body, her left hip, left elbow, left clavicle region or her upper back for the time period from January 11, 1997 to April 25, 1997.
7. On April 25, 1997, plaintiff reported problems with upper back pain to Dr. Perry.
8. On January 2, 1998, plaintiff reported to Dr. Perry that she was continuing to experience pain in her upper back and tingling in her left leg. Plaintiff described her pain as emanating from her left posterior cervical and left shoulder areas for several months. This report of pain is consistent with plaintiffs original report to her supervisor on January 13, 1997 that she had sustained an injury to her left clavicle region.
9. A January 1998 MRI revealed that plaintiff had significant disk disease and spinal stenosis at the C5-6 and C6-7 levels in her neck. Based upon a review of this MRI, Dr. Perry referred the plaintiff to be examined by Dr. Garner.
10. On February 23, 1998, plaintiff began a course of treatment for her neck problems under the direction of Dr. Garner. Plaintiff reported to Dr. Garner that her neck problems had started following her fall on ice the previous year. It was not until several months later that plaintiff decided to make a claim for workers compensation for these problems.
11. On March 19, 1998, Dr. Garner performed decompression surgery on plaintiffs neck. During the surgery, Dr. Garner discovered a poorly healed hairline fracture in a piece of bone that ran between a facet joint from one level in plaintiffs neck to a facet joint into another level in plaintiffs neck. Dr. Garner removed a pseudoarthrosis that had formed over the hairline fracture. These surgeries were reasonably necessary to relieve plaintiffs pain, effect a cure and lessen her disability.
12. As a result of the work-related January 11, 1997 slip and fall, plaintiff sustained a fracture in her neck.
13. As a result of the work-related January 11, 1997 slip and fall, plaintiff sustained an exacerbation of pre-existing cervical spondylosis and spinal stenosis.
14. As a result of the work-related January 11, 1997 slip and fall, plaintiff was physically unable to earn any wages for the time period beginning March 18, 1998 to June 29, 1998 and from June 30, 1998 to July 13, 1998.
15. Dr. Garner released the plaintiff to return to work on June 29, 1998. Plaintiff attempted a trial return to work for one day, and then returned to Dr. Perry seeking medical authorization to remain out of work due to the severity of neck pain she was experiencing. Dr. Perry provided the plaintiff medical authorization to remain out of work for an additional period up to July 13, 1998.
16. On July 10, 1998, the director of the Health Department, Keith Patton, met with the plaintiff for a pre-dismissal conference. Plaintiff presented to Mr. Patton a medical note from Dr. Perry authorizing her to remain out of work until July 13, 1998. Despite the presentation of this note, Mr. Patton terminated the plaintiff. Plaintiff expressed some reservations about her ability to return to work on July 13, 1998 as directed by Dr. Perry, but she did not tell Mr. Patton that she would not return to work on that day.
17. Plaintiffs authorized leave under the Family and Medical Leave Act ended on June 5, 1999. As a result of the January 11, 1997 work-related slip and fall, plaintiff did not return to work for the time period beginning June 6, 1998 to June 29, 1998 and from June 30 1998 to July 10, 1998. Plaintiff was terminated by Mr. Patton because plaintiff did not have any more leave time under the Family Medical Leave Act for these time periods and her workers compensation claim had been denied by the adjusting agent.
18. After her termination on July 10, 1998, plaintiff conducted a reasonable, but unsuccessful effort in attempting to secure employment. In a letter dated August 3, 1998, plaintiffs counsel sent a letter to Mr. Patton requesting that he reconsider the termination and allow the plaintiff to return to work. Plaintiff returned to work on November 6, 1998 at a job with Maria Parham Hospital. She worked there from November 6, 1998 to November 12, 1998, but had to end her employment because of the severity of her neck pain resulting from her January 11, 1997 work-related accident. On June 2, 1999, she obtained a job at a nursing home in Warren County. She attempted to do this job for the time period beginning June 2, 1999 to June 22, 1999, but had to end her employment because of the severity of the neck pain resulting from her January 11, 1997 work-related accident. In addition, plaintiff has been suffering from right-sided complaints since June of 1999, which also inhibit her ability to work. At this time it is unclear whether these complaints are related to her January 11, 1997 injury by accident.
19. As a result of the January 11, 1997 work related incident and related termination, plaintiff has been unable to earn any wages for the time period beginning July 13, 1998 to November 6, 1998, from November 12, 1998 to June 2, 1999 and from June 9, 1999 to the present and continuing.
 ***********
Based on the foregoing Findings of Fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an injury by accident arising out of and in the course of her employment with the defendant-employer on January 11, 1997. N.C. Gen. Stat. 97-2(6).
2. Subject to a reasonable attorneys fee, plaintiff is entitled to receive temporary total disability compensation in the amount of $409.95 per week for the time period beginning March 19, 1998 to November 6, 1998, from November 12, 1998 to June 2, 1999 and from June 22, 1999 to the present and continuing. N.C. Gen. Stat. 97-29.
3. As a result of the January 11, 1997 compensable injury by accident and subject to the limitations of N.C. Gen. Stat.97-25.1, plaintiff is entitled to have defendant pay all reasonable necessary medical expenses, which tend to effect a cure, provide relief or lessen the period of disability incurred by plaintiff as a result of this injury by accident including the March 19, 1998 surgery performed by Dr. Garner. This is to include plaintiffs right-sided complaints in the event causation is medically established with further evaluation and testimony by Dr. Garner. N.C. Gen. Stat. 97-25 and 97-25.1.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission adopts and affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Subject to reasonable attorneys fee, defendant shall pay plaintiff temporary total disability compensation in the amount of $409.95 per week for the time period beginning March 19, 1998 to November 6, 1998, from November 12, 1998 to June 2, 1999 and from June 22, 1999 to the present and continuing until further Order of the Commission. The portion of this amount that has accrued shall be paid to plaintiff in a lump sum subject to the attorneys fee approved below.
2. A reasonable attorneys fee in the amount of twenty-five percent of the compensation due plaintiff under paragraph 1 is approved for plaintiffs counsel and shall be paid as follows: twenty-five percent of the lump sum due plaintiff shall be deducted from that sum and paid directly to plaintiffs counsel. Thereafter, every fourth check shall be paid directly to plaintiffs counsel.
3. Subject to the limitations of N.C. Gen. Stat. 97-25.1, defendant shall pay all reasonably necessary medical expenses which tend to effect a cure, provide relief or lessen the period of disability incurred or to be incurred resulting from the January 11, 1997 work related compensable fall, including the surgeries provided by Dr. Garner and the right-sided complaints if Dr. Garner finds after further evaluation that they are related to plaintiffs January 11, 1997 injury by accident. If the parties are unable to agree on this issue within ten (10) days of the filing of this Opinion and Award, plaintiff shall schedule a deposition of Dr. Garner at defendants expense within sixty (60) days.
4. Defendant shall pay an expert witness fee in the amount of $250.00 to Dr. Garner and $155.00 to Dr. Perry, if not already paid.
5. Defendant shall pay the costs.
This the ___ day of August 2000.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/___________________ BERNADINE S. BALLANCE COMMISSIONER
S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
DCS/bjp